Let's turn now to the last case on our calendar for today, 21-1329-CV, Santucci v. Levine. And let's see, do we have Mr. Sussman on the line for the appellant? Yes, your honor. And Mr. Gaba for the appellee? Gaba, but yes, thank you, your honor. Mr. Gaba, thank you. And I can see that the audio and video are working. So, Mr. Sussman, I understand that you would like to reserve two minutes for rebuttal, is that right? Yes, your honor. Okay, you may proceed. Thank you, and may it please the court, nice to see each of you. With regard to this appeal, a motion to dismiss was granted by Judge Halpern. We think that was erroneous because all elements were pled for a viable selective prosecution matter and First Amendment retaliation claim. We believe the district court then erred in granting the motion to dismiss. Let me address the issues as I see the critical ones. First of all, the properties were similarly situated. They were zoned in the same way. They were subject to the same building and zoning laws. There was filling and grading going on on both properties, certainly much more on the property Mr. Heinecke owned. There were violations with regard to zoning codes as to where certain materials could be placed, that is, within 100 feet of the neighboring property owners. Under Hugh, we believe that the properties were reasonably closely in relationship and that this is ultimately under Harlan Associates' jury question. But this, of course, is a motion to dismiss. The district court, we believe, went off on a misunderstanding of the import of grandfathering to the status of this case. A grandfathered property in New York may not expand to prohibited use, and there was no doubt that in the R-60 zone, motocross was a prohibited use. Grandfathering, as all of you know, is a concept by which a prohibited use is allowed. However, it may not be in any way expanded or extended, and this is precisely what occurred and precisely what our client was complaining about. So the fact that it was a grandfathered use does not in any way change the comparability of the properties for purpose of approval. And I think this is more of a rhetorical question on my part. I think I know the answer. But were you arguing that your client's property was subject to certain entitlements under grandfathering? We were not. Right. So you're really not arguing that your two properties were treated dissimilarly, that they were similar properties treated dissimilarly, but that there was a grandfathering issue applicable to the other property that the town got wrong? Not really. And that because there's that different issue that you, I mean, maybe you're right that they have that wrong to the extent of how grandfathering works or not. But that makes them two different types of property. One had a legal issue that needed to be resolved, and yours did not have that legal issue that needed to be resolved. Even if we assume that all the grading is somehow comparable, which I'm not sure that's true, but let's assume it is, why are you similarly situated? But because with regard to the issue of an expansion of use, which is what happened here and what was being complained about, that expansion was no more permissible on a grandfathered property than it was on my client. It's not a question of getting it wrong. That's so bedrock law in New York State, it's not arguable in any way. Okay, so your argument is that the grandfathering is so obviously irrelevant that nobody could ever make a straight-faced argument. It would be kind of like saying that the neighbors liked gorgonzola cheese and that was the basis for the distinction, that it's just so obviously irrelevant that no sane person could have viewed them as anything other than comparable. Yes, and a motion to dismiss the notion that a distinction can be drawn between a property where, as you said, your Honor correctly noted, the grading was very dissimilar. There was a huge amount more grading and filling going on on the neighboring property, 1.68, 8.6 acres than there was on my client's 5-acre property. My client was complaining because that was going on and he was being enforced against with notices of violation when, in fact, the continuous property was engaging in much more of that practice and was being protected by a lawyer who cannot have immunity where, under the Stepien decision and other decisions of this court, that that attorney is acting and using the state authority for a private client who he concurrently is representing. I don't know of any case in this court which has said that an attorney who is using the power of the state to further a private interest in a situation like this gains some sort of immunity or is not deemed a state actor when he is working with the code enforcement officer, the building inspector, to discriminatorily enforce the law against the interests of one person for his own private client. You know, I can't imagine—there isn't a decision in this circuit that says it, nor anywhere else. And I think the decisions which presume, as Stepien does, that an attorney would be acting in good faith, a private attorney representing a town or a township, and would have immunity in that context that would not be viewed as a state actor but as a private actor may have some logic, although, frankly, it's hard to see when he's acting under the cloak of state authority in whatever he's doing. But here, that can't apply. So the basic point that I'm making is that the properties are similarly situated properties. They're zoned the same way. The fact that there is a motocross on one property that is grandfathered, understanding grandfathering what it means, the whole property isn't grandfathered. A use on the property is grandfathered, assuming it's true. Let me answer this. How are you today? Very good. If the motocross is viewed as an amenity, people in the town enjoy it, and there's no objection to their support for expanding it. It's not prohibited to expand a nonconforming use any more than somebody could allow a good restaurant to add more parking so that people can go there. You're trying to make the town's decision that they cannot expand a nonconforming use, and that doesn't make too much sense to me. Well, let me start here. Most of what Your Honor respectfully said is way before the record. It's not a public facility. It's not a facility which everyone in the town enjoys. There's no record evidence that the facility was a facility of anything of the sort you're speaking about. It was a privately used facility. It was a privately used facility for the benefit of an individual, his family, and his particular friends. So I don't see that as honestly. It's a small town. Judge, judge, but we all agree we're on a motion to dismiss. I don't want to abuse this too much and make it silly, but this isn't the case. The case is that the gentleman is close friends with his attorney from childhood, Mr. Stevens. Mr. Stevens basically goes to my client and says to my client, as does Mr. Levine, and this is pled. It's not something I'm making up. I wasn't there. None of us were there. It's pled. It's the allegations. You have to stop complaining about this gentleman, Mr. Heineke. You have to allow him to use your property or your life's going to be hell. That's basically what's going on. Now, that can't be permissible. I don't care if everybody in the town liked it, didn't like it. That's the horror of the record anyway, but that can't be the standard. And to your point about nonconforming uses, respectfully, that is not the law in New York State. The law in New York State, which has been construed in decision after decision, is that a prohibited use, which is grandfathered, may not be expanded or extended. And it is black letter law. It's not subject to this maybe, maybe not. Because if it was subject to maybe, maybe not, then the whole force would be lost. A person might apply for a variance. He didn't do that. Was your client's chicken farm an above ground pool? Was that consistent with the municipal rules? Yes, it was. And that's why nothing ever came of it other than the harassment and the costs it tended to defending against the notices. These were bad faith efforts to pressure my client, as the complaint makes clear, because he would not capitulate to Levine and Stevens and to Paula, who joined in at one point, and approached my client and Mr. Liguori, his lawyer, and said to them, you better stop complaining about the unequal application of law. My point went as far as to get Zarin and Steinmetz, which is a well-known planning and consulting firm in these northern counties, to do a study of enforcement efforts. And they reported to the town board, to Mr. Levine, to Mr. Stevens, that there was a pattern of unequal enforcement of the law. These folks then come back to my client and say, guess what? You can't have chickens. You have four chickens. You're only allowed three. Not true. You can't have an above ground pool. Mr. Chessman. Mr. Chessman. Yes. I understand. You've reserved two minutes for rebuttal. If you'd like to use any of that time now, I'm happy to let you go on. I'm having a lot of fun, but I'm going to shut up. I'm going to stop. Hold your powder. I'm going to stop. Thank you, Judge Jacobs. You're the friend that I love seeing. I'm sorry. Mr. Gabba, you may proceed. No, Dean. Before I get to my argument though, and again, I don't know that it has that much to do with his appeal, although Mr. Sussman may feel differently. He's misstated the law in New York state regarding nonconforming uses. Yes, it's true. As a general proposition, nonconforming uses cannot be expanded. Question what constitutes expansion, however, is a factual matter, usually determined by the municipality. For example, in the matter of mines, once a property is acknowledged as nonconforming use for a mine, the entire property from border to border may be cleared and used as a mine. Likewise, once a nonconforming use is established, it can be repaired. It can be embellished as long as the use itself is not expanded. The idea that this motor track at the Heineke property was being expanded illegally is something that has never been substantiated. In fact, it's been rejected by the town. Moreover, his client never appealed from the building inspector determinations that the use was legally established. So I'd suggest that there's binding law, or at least facts in this case, to the contrary, and that Mr. Sussman is misstated the law regarding to nonconforming uses. As I understand the claim here, the Santucci's were complaining about the motocross noise and expansion, which they were privileged to do as citizens and as neighbors. And they were told that that if they if they consented to this expansion by yielding a piece of or a corner of their property to facilitate it, all kinds of other problems would go away, including the number objection to the number of chickens that they had to their above ground pool. That's what I'm hearing arguing. Well, there's one statement in the second amended complaint saying that I believe it was. I believe it was Mr. Levine who indicated to Mr. Santucci that if he was willing to resolve his differences over a boundary line, Mr. Heineke claimed an easement over the property. Mr. Santucci had set up surveyors saying, no, you don't have any right to go over there, that he would his problems would go away. Now, what problems were being referenced is another matter. It could very well. What problems were outstanding? The problem between Mr. Heineke and Mr. Santucci. Mr. Heineke apparently had, well, undertaken various actions to annoy Mr. Santucci. Apparently there's allegations that on Mr. Santucci's daughter's, I believe it was her 16th birthday. I forget exactly what the occasion the party was undertook to have rather substantial use of the motocross that day. And apparently the neighbors didn't like each other very much. So it could very well equally have been interpreted as, listen, resolve your differences with Heineke. Yes, but at this point, we're obliged. We're obliged to construe all of these matters most favorably to the plaintiff. And my concern that I'd like you to address with respect to the retaliation claim is that the district court was concerned that there was too much of a temporal gap between the EEOC filings and the alleged adverse action. But I'm wondering whether the records indicate something quite different because there were continuing complaints. For instance, on September 14th, a complaint to Mr. Levine on November 2014, a complaint to the ZBA. And then that's followed within two months by Mr. Levine denying plaintiffs request to renew a building permit on January 5th and his issuance of the stop work order on January 28th. We continue on September 17th of 2015, there was a complaint to Mr. Levine, who on September 18th is alleged to have imposed what again are alleged to be atypical terms for the redemption of work. I could go on like this December 10th and 11th complaints to the town board Levine, followed by December 11th, the alleged arbitrary enforcement of provisions concerning the red height. I'm not suggesting that there are not disputes that you might succeed on on all of this, but I'm not sure how we would conclude that there isn't a plausible claim of retaliation. What's your response to that? Well, Judge Raji, I agree with you that the allegations in the complaint must be, to the extent they're factual allegations deemed as true and viewed in the light most favorable to plaintiff. But when you look at those allegations, it's no doubt, if accepted, claims that from late 2014 through 2017 complaints were made. I won't say continuously but but rather regularly in order to determine whether alleged adverse actions. Well, let's let's focus on the adverse action, because I think that's where the district court got the case right. The initial adverse actions were violations for adding fill to the walls that Santucci was building around his property by the port light, and also a wetlands violation. Those were issued in 2014. However, this lawsuit was commenced December 29 2017. So the three year statute limitations bars, those 2000 any claims based on those 2014 alleged adverse actions. 2015 when we're past the statute of limitations. We're talking about the complaint for having too many chickens, and the complaint for storing a commercial vehicle on the property. Now the complaint specifically alleges the second amended complaint does that these adverse actions were taken in retaliation for communications between Santucci independent counsel that was hired by the town to pull up problem with that is the second amended complaint never alleges that anyone at the town had knowledge of the statements allegedly made by Santucci to depot. Since there's no allegation that the town had knowledge of those communications, it would break the causal connection between the state alleged statement to depot and the alleged adverse action and that would defeat any claim of First Amendment retaliation, but who then took adverse action. Well I haven't finished going through all the adverse. Okay. Okay, I'm sorry, please let me let you continue. So in 2016, there was, I believe a complaint for an above ground pool was built without any building permit and in violation of the bulk requirements of the town zoning requirements. Pardon me. Now, the First Amendment retaliation claim, if it's going to be properly pled has to plausibly allege that that violation was issued, either out of motivation for substantially due to the prior statements made by the Santucci. And since there's no allegation to complain that the pool was either built with a building permit or in compliance with zoning, I would suggest that it does not plausibly allege that and you could say the same thing for the other allegations that you were discussing for example denial of the building permit. There's no allegation that he was entitled to the building permit, or in regard to the ZBA, there's no allegation that before the ZBA made a determination that he didn't need a, I believe it was a site plan for the retaliation for statements that were made by, not whether his complaint was meritorious, but whether there's a plausible basis to think that then the negative action was in retaliation for his complaint. Exactly, Your Honor, and that's what our argument is that there is no such courts. To the extent the district courts conclusion was that there was a lack of temporality. My concern is that, at least with respect to these complaints and these actions. There's, there is temporality. Well, Your Honor, I think for some of the allegations certainly there is not, if you wish to focus on some of the more minor allegations perhaps there is but the fact of the matter is our argument is that it does not plausibly plead that those adverse actions were taken either substantially or purely out of motivation for retaliation. Okay, thank you. Lastly, if I could just quickly I know I'm almost out of time here. Yeah, you can make one last point that's fine. On the claim against Willis Stevens. Mr. Stevens was retained as counsel for the town, and his actions in regard to this, this matter as pledged in the complaint were simply providing legal advice and services to municipality 1983 claim cannot be maintained against an attorney for actions allegedly taken by municipality and reliance upon his advice. So I think that in any event the claim against Stevens was properly dismissed. Unless there are any questions, we'll rest on our brief. Thank you. All right, then, Mr Sussman we'll go back to you now you have two minutes for rebuttal if you have anything you'd like to add. Thank you for your courtesy in the summer of 2014 Stevens tells Mr Liguori to get plaintiff to quit complaining about motocross or if not, he's going to make it hard for plaintiff to do anything on his property. A few days later Levine tells Mr Santucci that if he allows Heineke to encroach on his land a lot of his problems will go away. Paragraph 67 and 68 of the complaint. Paragraph 75 of the complaint. This is in the limitations period within the limitations period Stevens asserts an easement over the Santucci property for Heineke demands removal of the property marker. Levine denies within a month of that Mr Santucci's request to renew the permit to complete the stonewall within the limitations period. Santucci complains that five days later about the violations that are on the Heineke property. There's absolutely no response by Mr Levine whatsoever, other than to say he's too busy within a week of the complaint. Levine issues another stop work order to Mr Santucci on a stonewall building. Your Honor, if you go through that paragraph 82 of the complaint, if you go through the complaint as Judge Raji obviously is done with care, you will see both the temporal connection and within the statute of limitations period repeated threats against my client as well as repeated acts, which incredibly increased the cost of his living in any peaceable way on premises, which he had purchased. Yes, Judge. Why, why isn't Zara versus Southhold adverse to you? I mean, we're not supposed to become zoning boards of appeals and here we're dealing with the allowed to motocross an above ground pool excess chickens. I mean, these are things that, that by zoning boards, we have to assume they're doing the right thing. I, I, I agree with you that a lot of this raises suspicions as to whether they're acting in good faith, but then is that our job? Yeah, your job respectfully, you know, your job a lot better than I know your job, but there are 2 responses. There are 2 responses. 1 is that when you have plain statements by officials who are the building inspector, who are the attorney, who are the attorney to a neighboring property owner that we're going to make your life hell. If you don't stop complaining about someone else that trespasses the 1st amendment, and it is your job to enforce that. That's not a zoning boards job. If I take that to a zoning board, they look at me like I'm crazy. Go to a federal court. 2nd of all, it's clear there's a selective enforcement cause of action under your case law and that selective enforcement action comes where there is a showing of bad faith, which there is here when counsel gets up and says, well, Stevens is free because all Stevens was the attorney for the town. That entirely negate, neglects, and as Judge Raji correctly points out, incorrectly neglects what's pled, which is he was the attorney at the same time for the neighboring property owner and used his authority to oppress my client. Thank you very much. Thank you counsel. We will reserve decision. We have reached the end of the calendar for the day I would like to thank parties for participating by zoom, we'd also like to thank the IT department of the court, and for a courtroom deputy for making this all possible for us to join you today. So with that, I would like to ask Miss Rodriguez to adjourn. Thank you judges. Thank you all. Thank you. Thank you.